In the United States District Court
for the Southern District of Georgia
Augusta Division

LOUIS SILVERSTEIN and          *
LARRY VINSON,                  *
Individually and on Behalf     *
of a Class of All Others       *
Similarly Situated,            *
                               *
     Plaintiffs,               *
                               *
     vs.                       *          CV 108-003
                               *
THE PROCTER & GAMBLE           *
MANUFACTURING COMPANY, and     *
THE PROCTER & GAMBLE           *
DISTRIBUTING, LLC              *
                               *
     Defendants.               *


## ORDER

This action arises out of Procter & Gamble's
manufacture and sale of Crest Pro-Health mouthwash, which
allegedly stains its users' teeth and impairs their sense
of taste.  Plaintiff-consumers Louis Silverstein and Larry
Vinson have filed a three-count complaint against Procter &
Gamble, alleging (1) a violation of Georgia's Uniform
Deceptive Trade Practices Act ("UDTPA"), (2) equitable
fraud, and (3) fraud and deceit.  Presently, Plaintiffs
move to certify a plaintiff class under Count I only, the

alleged UDTPA violation. Defendant opposes this motion and moves for summary judgment as to Count I. Both motions have been fully briefed. The Court addresses both motions here.

The first step in deciding whether to certify a class is to determine whether the proposed class representatives have standing, and today the Court's inquiry goes no further than that. <u>Prado-Steiman v. Bush</u>, 221 F.3d 1266, 1279-80 (11th Cir. 2000). The Court finds that Plaintiffs have neither constitutional nor statutory standing to maintain their UDTPA claims and therefore declines to certify the plaintiff class for Count I.

Having determined that Plaintiffs lack standing to sue under the UDTPA, the Court grants Defendant's motion for summary judgment as to Count I, Plaintiffs' UDTPA claim.

## **BACKGROUND**

Plaintiffs Silverstein and Vinson both purchased Crest Pro-Health mouthwash as consumers. After using the mouthwash, each noticed that his teeth had acquired a brown stain and that his sense of taste was impaired. Silverstein Aff. ¶¶ 8-9 (Dkt. No. 50); Vinson Aff. ¶¶ 7, 9

(Dkt. No. 49).  Since then, both plaintiffs have stopped using Crest Pro-Health mouthwash.  Silverstein Aff. ¶¶ 10-11; Vinson Aff. ¶ 13.

Plaintiffs allege that the active ingredient in Crest Pro-Health mouthwash, cetylpyridinium chloride ("CPC"), caused Plaintiffs' tooth staining and loss of taste. Plaintiffs further allege that when CPC interacts with sodium laurel sulfate, a common ingredient in toothpaste, Crest Pro-Health's ability to fight plaque is greatly diminished.  Lastly, Plaintiffs assert that the product label failed to warn consumers about the dangers of CPC or to tell consumers what to do when their teeth became stained and their sense of taste became impaired.


**DISCUSSION**


I.   Plaintiffs' Motion to Certify Class

"[A]ny analysis of class certification must begin with the issue of standing."  Murray v. U.S. Bank Trust Nat'l Ass'n, 365 F.3d 1284, 1289 n.7 (11th Cir. 2004) (quoting Prado-Steiman v. Bush, 221 F.3d 1266, 1280 (11th Cir.

2000)).[1]  Specifically, the court must determine whether the named plaintiffs, as individuals, have standing to pursue the claims they intend to pursue on behalf of the class. Id.; accord Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987).  The named plaintiffs must have standing for each claim they raise.  Murray v. U.S. Bank, 365 F.3d at 1289 n.7.  If the plaintiffs move for class certification, but lack individual standing to raise the claim on which they seek certification, the court should deny certification.  See Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1355 (11th Cir. 2001) (vacating district court's certification order when named plaintiffs lacked standing).

There are multiple types of standing.  Constitutional standing ensures that courts do not assume jurisdiction over disputes that are not "case[s] or controvers[ies]" within the meaning of Article III.  Lujan v. Defenders of

---

[1] In Prado-Steiman v. Bush, the Eleventh Circuit held that courts should determine whether plaintiffs have Article III standing before turning to class certification under Federal Rule of Civil Procedure 23.  Later, in Murray v. Auslander, the Eleventh Circuit expanded that rule of antecedent standing analysis to non-constitutional standing.  244 F.3d 807, 811 n.5 (11th Cir. 2001) (applying rule of antecedent standing analysis to mootness doctrine because "[m]ootness has been described as the doctrine of standing set in a time frame.").  Therefore, it is proper to consider both constitutional and statutory standing before addressing the requirements of Rule 23.

_Wildlife_, 504 U.S. 555, 560 (1992). Prudential standing encompasses a host of doctrines of judicial self-restraint, such as the rule that courts will not address political questions more appropriately resolved by the representative branches of government. _Allen v. Wright_, 468 U.S. 737, 751 (1984). Statutory standing asks whether a statute creating a cause of action permits the plaintiff before the court to prosecute that cause of action. See _Fed. Election Comm'n v. Nat'l Conservative Political Action Comm._, 470 U.S. 480, 484-91, 501 (1985) (ordering dismissal of complaint for lack of statutory standing). Here, the Court addresses constitutional and statutory standing.

Plaintiffs ask the Court to certify the following class:

> All natural persons residing in the State of Georgia who have purchased Crest Pro-Health mouthrinse in the State of Georgia, and all persons who have used Crest Pro-Health mouthrinse that was purchased in the State of Georgia by someone in the user's household. Expressly excluded from the class are employees, officers and directors of Defendants and all counsel of record.

Pl.'s Am. Mot. to Certify Class (Dkt. No. 55).


A. _Constitutional Standing_

Constitutional standing has three components: (1) the plaintiff must have suffered concrete harm, (2) that harm must be traceable to the defendant's complained-of conduct, and (3) the relief plaintiff seeks must be reasonably likely to redress that harm. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998). The third component, redressability, is at issue here.

Plaintiffs in this case seek injunctive relief. Pl.'s Br. in Supp. of Mot. for Certification 6 (Dkt. No. 54); see also Catrett v. Landmark Dodge, Inc., 253 Ga. App. 639, 644 (2002) ("[I]njunctive relief is the only remedy permitted by [Georgia's] UDTPA."). "The function of an injunction is to afford preventative relief, not to redress alleged wrongs which have been committed already." White v. Sparkill Realty Corp., 280 U.S. 500, 511 (1930). Because injunctions can rectify ongoing or future harm but cannot redress past harm, a plaintiff who cannot show "continuing, present adverse effects" or "a real and immediate threat of future harm" lacks Article III standing to pursue an injunction. Elend v. Basham, 471 F.3d 1199, 1207-08 (11th Cir. 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103, 105 (1983)). To have standing to pursue an

injunction, a plaintiff's allegations of future injury must be "particular and concrete." Steel Co., 523 U.S. at 109. The desire to deter or prevent future misconduct, however well-intentioned, cannot supplant the showing of ongoing or future harm that Article III requires. Id. at 108-09.

Here, Plaintiffs have alleged past harm – browned teeth and a loss of taste. An injunction could not right these wrongs. Plaintiffs have not alleged ongoing or future harm, however, and could not reasonably do so - since they are now aware of Crest Pro-Health's alleged deficiencies, Plaintiffs have stopped buying the product. Silverstein Aff. ¶¶ 10-11 (Dkt. No. 50); Vinson Aff. ¶ 13 (Dkt. No. 49). Their harm, therefore, is entirely in the past and will not recur unless Plaintiffs buy the product again. Because Plaintiffs cannot plausibly allege ongoing or future harm, they fall well short of Article III's requirement that applicants for injunctive relief make "particular and concrete" allegations of future injury. Steel Co., 523 U.S. at 109. Therefore, they lack Article III standing to pursue an injunction.

To demonstrate that they have standing, Plaintiffs cite Friends of the Earth, Inc. v. Laidlaw Environmental

Services, Inc., 528 U.S. 167 (2000). Specifically, they
draw the Court's attention to this passage:

> It can scarcely be doubted that, for a plaintiff
> who is injured or faces the threat of future
> injury due to illegal conduct ongoing at the time
> of suit, a sanction that effectively abates that
> conduct and prevents its recurrence provides a
> form of redress.

Id. at 185-86.

The crucial difference between Laidlaw and this case,
however, is that in Laidlaw, the plaintiffs' harm was
ongoing when they brought suit. The Laidlaw plaintiffs
alleged that they were unable to swim in, fish in, or camp
near the North Tyger River because of upstream pollution.
Id. at 181-83. Those problems were continuing when the
plaintiffs filed their complaint. Id. at 178, 188.
Therefore, the Court wrote, the civil penalties[2] sought by
the plaintiffs would redress the plaintiffs' harm by
spurring the defendant to comply with its EPA-issued
permit, thus making the river once again suitable for

---

[2] In the portion of Laidlaw cited by Plaintiffs, the Court
was considering standing to pursue civil penalties, not an
injunction. Id. at 185-86. The distinction is not a
meaningful one, however, because a plaintiff demonstrates
standing to pursue both remedies in the same way - by
showing that the cessation of the defendant's conduct would
redress the wrong of which the plaintiff complains. Id. at
186.

fishing, swimming and camping. Id. at 186. In short, the relief sought would redress the plaintiffs' ongoing harm.

Here, in contrast, the named Plaintiffs are no longer being harmed by Crest Pro-Health's alleged defects. Their teeth are no longer browning and their senses of taste are no longer deteriorating, so an injunction would not redress their harms. Silverstein Aff. ¶¶ 10, 11 (Dkt. No. 50); Vinson Dep. 39, 59 (Dkt. No. 57 Ex. 4). Although Defendant's conduct – the distribution of an allegedly harmful product with inadequate labeling – continues unabated, the Court's analysis as to standing focuses on Plaintiffs' injuries, not only on Defendant's conduct. Elend, 471 F.3d at 1199. The harm to Plaintiffs has already run its course.

In determining whether to certify the class that Plaintiffs propose, the Court must not focus on the standing of unnamed class members. Although some members of the proposed class might, in theory, have standing to seek an injunction because they do not yet know about Crest Pro-Health's alleged defects and may therefore sustain future harm from the product, the Court must focus on the named plaintiffs. Murray v. U.S. Bank, 365 F.3d at 1289

n.7.  Whether the unnamed class members have standing is irrelevant.

It is true, as Plaintiffs point out, that the rule requiring injunction-seeking plaintiffs to demonstrate an ongoing injury makes it difficult for consumers to obtain injunctions against manufacturers of defective products. The result of the rule, in most applications, is that once a plaintiff learns about a product's defect, he has lost his standing to enjoin the manufacturer from producing it. Such is the state of the law.  However, nothing in this order suggests that Plaintiffs lack standing to bring products liability or fraud claims.


### B.  *Statutory Standing*

When a plaintiff asserts statutory authorization to sue, he must fall within the class of plaintiffs to whom the statute grants the authority to maintain suit.  See Fed. Election Comm'n, 470 U.S. at 484-91.  This question of statutory authorization has been called "statutory standing" or "standing under the statute."  Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999); Fed. Election Comm'n, 470 U.S. at 489.  Although the Court has made

constitutional standing its initial inquiry here, some cases have held that statutory standing "may properly be treated before Article III standing." Ortiz, 527 U.S. at 831. It has been said that statutory standing comprises the zone-of-interests test, "which seeks to determine whether . . . the plaintiff is within the class of persons sought to be benefited by the provision at issue." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 287 (1991) (Scalia, J., concurring).

In order to obtain an injunction[3] under Georgia's UDTPA, a plaintiff must show that he is "likely to be damaged" by the defendant's deceptive trade practice. O.C.G.A. § 10-1-373(a). A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is "likely to be damaged" within the meaning of section 10-1-373(a). Catrett, 253 Ga. App. at 644. Such a plaintiff lacks standing to maintain his suit. Id.

In Catrett v. Landmark Dodge, the plaintiff alleged that the defendant-car dealer had misrepresented the condition of a truck it sold to the plaintiff. 253 Ga.

---

[3] The UDTPA offers only injunctive relief. Catrett, 253 Ga. App. at 644; Moore-Davis Motors, Inc. v. Joyner, 252 Ga. App. 617, 619 (2001).

App. at 639.  The plaintiff asserted a claim under the
UDTPA, but the trial court granted summary judgment to the
defendant as to that claim.  Id.  The Court of Appeals
affirmed, writing:

> [The plaintiff] now seeks to enjoin [the car
> dealership] from continuing its Deceptive Trade
> Practices.  Yet, he has not presented any evidence
> – or even alleged – that he is "likely to be
> damaged" by these trade practices in the future.
> Damage allegedly caused by the 1999
> misrepresentation cannot be remedied through an
> injunction.  To survive summary judgment [on his
> UDTPA claim], [the plaintiff] had to raise a
> factual question about the likelihood of some
> future wrong.  Because he failed to do so, the
> trial court properly granted [the defendant]
> summary judgment on the UDTPA claim.

Id. (internal citations omitted); accord Moore-Davis
Motors, Inc. v. Joyner, 252 Ga. App. 617, 619 (2001).

As discussed above, Plaintiffs in this case cannot show
that they will suffer ongoing or future harm from
Defendant's allegedly deceptive trade practices.  Instead,
Plaintiffs' harm is entirely past.  Because Plaintiffs
cannot "raise a factual question about the likelihood of
some future wrong," they lack statutory standing to
maintain an action under the UDTPA.  See Catrett, 253 Ga.
App. at 644.

Plaintiffs describe this result as a "catch twenty-two

of statutory construction." Pl.'s Reply Br. in Supp. of Class Certification 1-2 (Dkt. No. 68). Instead of a Joseph Heller-like dilemma, however, this result is actually a vindication of the UDTPA drafters' intent. Although its text does not foreclose lawsuits by consumers, the UDTPA was drafted primarily to allow businesses to enjoin their competitors' unfair or deceptive trade practices. As the Illinois Court of Appeals has written,

> Although the Deceptive Practices Act was intended to protect businessmen and provide them with a remedy for unethical competitive conduct, its provisions have also been found applicable to cases where a consumer brings suit. However, the problem inherent in consumer actions is the inability to allege facts which would indicate that plaintiff is "likely to be damaged." Ordinarily, the harm has already occurred, thereby precluding injunctive relief.

Hanya v. Arby's, Inc., 425 N.E.3d 1174, 1186 (Ill. App. 1981) (applying substantially similar version of UDTPA). The Illinois Court of Appeals's language aptly describes the problem that faced the plaintiff in Catrett and that faces Plaintiffs in the case at bar. The problem was fatal in Hanya and Catrett, and it is fatal here.

## II. Defendant's Motion for Partial Summary Judgment

A party is entitled to summary judgment if "there is no

genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view all facts and draw all inferences in favor of the non-movant. Scott v. Harris, 127 S.Ct. 1769, 1774 (2007).

Normally, if a court determined that class certification was improper because the named plaintiffs lacked standing, the court would deny certification but would not grant summary judgment sua sponte. See Piazza v. Ebsco Indus., Inc., 272 F.3d 1341, 1354-55 (11th Cir. 2001) (finding that class could not be certified because plaintiffs lacked standing, vacating certification order, and remanding without instructions to dismiss). This case is different, however, because Defendant has already moved for summary judgment on Plaintiffs' UDTPA claims.

Because the Court has determined that Plaintiffs lack constitutional and statutory standing to maintain their UDTPA claim, the Court grants Defendant's motion for summary judgment as to Plaintiffs' UDTPA claim.

**CONCLUSION**

Because Plaintiffs lack constitutional and statutory standing to sue under the UDTPA, the Court **DENIES** Plaintiffs' amended motion to certify a class. Dkt. No. 55. For the same reason, the Court **GRANTS** Defendant's motion for partial summary judgment as to Count I of Plaintiffs' third amended complaint. Dkt. No. 56 (motion for partial summary judgment); Dkt. No. 37 (third amended complaint).

**SO ORDERED**, this _12_ day of November, 2008.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA