# In the United States District Court
# for the Southern District of Georgia
# Augusta Division

| | | |
|---|---|---|
| LOUIS SILVERSTEIN and LARRY VINSON, | * * | |
| Plaintiffs, | * * | |
| vs. | * * | CV 108-003 |
| THE PROCTER & GAMBLE MANUFACTURING COMPANY, and THE PROCTER & GAMBLE DISTRIBUTING, LLC, | * * * * * | |
| Defendants. | * | |

### ORDER

Plaintiffs Louis Silverstein and Larry Vinson brought this case to recover damages for the tooth discoloration and taste impairment that Plaintiffs allegedly experienced after using Crest® Pro-Health™ Rinse mouthwash ("Pro-Health"), a product manufactured and distributed by Defendants. Count One of Plaintiffs' Fourth Amended Complaint alleges that Defendants are liable to Plaintiffs on a strict products liability theory. (4th Am. Compl. ¶ 48-59.) Count Two, entitled "Intentional Misconduct," alleges that Defendants manufactured, marketed, and sold Pro-Health despite knowledge of its harmful effects. (4th

Am. Compl. ¶ 63.)  Plaintiffs have elected to waive their claim under Count Two, however, and proceed solely on the strict liability claim in Count One.  (Dkt. No. 161.)

Defendants have moved for summary judgment on all claims asserted by Plaintiff Larry Vinson.  Defendants also move that if summary judgment is not granted on all claims, partial summary judgment is appropriate insofar as Vinson alleges that the warning label on Defendants' product was inadequate.  (Dkt. No. 116.)  This Court **GRANTS** Defendants' Motion as to the inadequate warning claim.  In all other respects, however, the Court **DENIES** Defendants' Motion for Summary Judgment.

**BACKGROUND**

Defendants manufacture and distribute Pro-Health.  Vinson alleges that after using the product for a week, he experienced a "noticeable difference" in his sense of taste: food did not "taste as sweet or as salty."  (Vinson Dep. 26.)  Vinson examined the inside of his mouth and allegedly discovered staining on his teeth and discoloration of his tongue.  (Id. at 25-27.)  Despite these symptoms, Vinson continued to use Pro-Health for several weeks.  (Id. at 11, 27, 31.)  The staining on Vinson's teeth was eventually removed by his dentist, Dr. William Long, during a regular dental cleaning appointment.

2

(Id. at 59.)  Vinson's sense of taste returned to normal after he ceased using Pro-Health.  (Id. at 39.)

According to Vinson, Pro-Health caused his temporary tooth discoloration and taste impairment.  Vinson further alleges that the warning label on the Pro-Health bottle is inadequate because it does not warn of the potential side effects associated with the product's active ingredient, cetylpridinium chloride (CPC). Vinson seeks damages for his bodily injuries, attorneys fees, costs, and punitive damages.

**DISCUSSION**

I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to

3

show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

II. STRICT LIABILITY

Vinson seeks to recover from Defendants under a theory of strict liability. Because this action is based on diversity of citizenship, Georgia's substantive law applies. <u>Eire R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938). Under Georgia law, the manufacturer of a product sold as new is strictly liable to an individual who is injured by the product. O.C.G.A. § 51-1-11(b). However, there can be no recovery unless the manufacturer's product can be shown to be the proximate cause of the alleged injuries. <u>Talley v. City Bank Corp.</u>, 158 Ga. App. 130, 135, 279 S.E.2d 264, 269 (1981); <u>see</u> <u>also</u> <u>Powell v. Harsco Corp.</u>, 209 Ga. App. 348, 350, 433 S.E.2d 608, 610 (1993) ("Whether proceeding under a strict liability or negligence theory, 'proximate cause' is a necessary element of [the plaintiff's] case.").

### A. "Injured by the Product"

Defendants argue that Vinson's strict liability claim cannot survive summary judgment because Vinson failed to offer any evidence that he suffered a compensable injury resulting from his use of Pro-Health. Based upon the evidence submitted, a jury would be entitled to find otherwise. Although the tooth

4

discoloration and taste impairment that Vinson experienced were admittedly mild and impermanent, the physical harms Vinson alleges are still cognizable injuries permitting recovery in tort.

To recover in tort under Georgia law, a plaintiff must show that he has suffered injury to either person or property. Pickren v. Pickren, 265 Ga. App. 195, 195, 593 S.E.2d 387, 388 (2004). Even a slight injury may sustain tort recovery, provided the plaintiff "manifest[s] physiological symptoms in connection with the defendant's alleged tortious act." Parker v. Brush Wellman, Inc., 377 F. Supp. 2d. 1290, 1297 n.5 (N.D. Ga. 2005) (citing Chambley v. Apple Rests., Inc., 233 Ga. App. 498, 499, 504 S.E.2d 551, 553 (1998)). Further, a physical injury does not have to be permanent for a plaintiff to recover damages. Sam Finley, Inc. v. Russell, 75 Ga. App. 112, 117, 42 S.E.2d 452, 455 (1947).

Here, Vinson alleges that he did "manifest physiological symptoms" after using Defendants' product: his teeth and tongue became darker in color and his sense of taste became less acute. Thus, Vinson has offered evidence that he suffered a compensable injury resulting from his use of Defendants' product. That the harm Vinson experienced was only temporary does not preclude his recovery in tort. Sam Finley, 75 Ga. App. at 112.

5

Nevertheless, Defendants argue, "[w]here evidence as to the amount of damages is merely speculative, summary judgment is appropriate." Lay Bros., Inc. v. Golden Pantry Food Stores, Inc., 273 Ga. App. 870, 875, 616 S.E.2d 160, 165 (2005). Defendants' reliance on Lay Bros., however, is misplaced. Lay Bros. involved a breach of contract, not a personal injury tort. Id. at 870-71. In personal injury actions, the sole measure of damages for the physical suffering and inconvenience of the plaintiff is the "enlightened conscience of fair and impartial jurors." Stubbs v. Harmon, 226 Ga. App. 631, 633, 487 S.E.2d 91, 93-94 (1997). Thus, Defendants are not entitled to summary judgment merely because Vinson has not proffered evidence of monetary damages stemming from his alleged tooth discoloration and taste impairment.

B. **Proximate Cause**

Defendants also argue that summary judgment is appropriate because Vinson is unable to establish that Pro-Health was the proximate cause of his alleged injuries. Specifically, Defendants contend that Vinson has failed to offer any expert evidence that would allow a reasonable jury to find, to a reasonable degree of medical probability, that Vinson's alleged injuries were caused by his use of Pro-Health. See Wilson v. TASER Int'l, Inc., 303 F. App'x 708, 715 (11th Cir. 2008) (unpublished opinion).

6

Under Georgia law, proof of causation in strict products liability cases generally requires reliable expert testimony. Rodrigues v. Georgia-Pacific Corp., 290 Ga. App. 442, 444, 661 S.E.2d 141, 143 (2008). Expert testimony may not be required in "simple" defect cases. SK Hand Tool Corp. v. Lowman, 223 Ga. App. 712, 712-15, 479 S.E.2d 103, 105-07 (1996). However, if the inference that the defendant's product caused the plaintiff's injury is not a "natural inference that the juror could make through human experience. . . . medical expert testimony [is] essential to prove causation." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1320 (11th Cir. 1999).

Courts have generally found that expert medical testimony is required to show causation where the plaintiff manifests unexpected physiological symptoms after using or otherwise encountering the defendant's product pursuant to the product's intended use. See, e.g., Allison, 184 F.3d at 1320 (expert testimony required to show that breast implants can cause systemic disease); Leathers v. Pfizer, Inc., 233 F.R.D. 687, 701 (N.D. Ga. 2006) (expert testimony required to show that cholesterol medication Lipitor could cause extreme fatigue and muscle pain). Here, the inference that Pro-Health could cause consumers to experience tooth discoloration and taste impairment is "not a natural inference that a juror could make through human experience." Allison, 184 F.3d at 1320. Expert medical

7

testimony is therefore "essential to prove causation" in this case. Id.

Georgia law requires that an expert "state an opinion regarding proximate cause in terms stronger than medical possibility, *i.e.*, reasonable medical probability or reasonable certainty." Ambling Mgmt. Co. v. Purdy, 283 Ga. App. 21, 29, 640 S.E.2d 620, 627 (2006) (citing Zwiren v. Thompson, 276 Ga. 498, 503, 578 S.E.2d 862, 866-67 (2003)). To establish a cause and effect relationship between the plaintiff's use of the defendant's product and the plaintiff's alleged injuries, the plaintiff must offer proof of both general and specific causation. Siharath v. Sandoz Pharms. Corp., 131 F. Supp. 2d 1347, 1352 (N.D. Ga. 1999); see also Jane F. Thorpe, Georgia Products Liability Law § 9-3 (3d ed. 2002). "General causation is the capacity of a product to cause injury; specific causation is proof that the product in question caused the injury of which the plaintiff complains." See Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1357 (N.D. Ga. 1999). Thus, in order to survive Defendants' Motion for Summary Judgment, Vinson must produce expert evidence that would allow a reasonable jury to find, to a reasonable degree of medical probability or certainty, that Pro-Health: (1) is capable of causing tooth discoloration and taste impairment, and (2) that the mouthwash did in fact cause Vinson

8

to suffer his alleged injuries. See Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1321 (N.D. Ga. 2002).

As evidence of general causation, Vinson offers the expert witness report of Dr. Martin Addy, a Professor of Periodontology at the University of Bristol. Dr. Addy's report concludes that the active ingredient in Pro-Health, cetylpridinium chloride (CPC), causes extrinsic staining of the teeth and/or taste impairment in some proportion of Pro-Health users. (Addy Rep. 6-8, Dkt. No. 156.) Dr. Addy conducted past studies with chlorhexidine, a cationic antiseptic similar to CPC that binds to negatively charged oral surfaces, including the surfaces of the teeth and tongue. The adsorbed layer of chlorhexidine molecules forms an antibacterial coating that prevents the multiplication of primary plaque formers on the teeth, thus explaining the antiseptic's preventative properties. Dr. Addy's research, however, found that the positively charged molecular layer also binds with negatively charged dietary chromogens found in some food and drink, leaving a brown staining on the teeth and tongue in some users. (Addy Rep. 1-3.) Dr. Addy also avers that the positively charged molecules may adhere to taste buds on the surface of the tongue, effectively inhibiting their contact with flavors. (Id. at 2-3.)

Dr. Addy's report observes that "[t]he mechanism of staining, and probably of taste disturbance, is the same for CPC

9

[the cationic antiseptic found in Pro-Health] as chlorhexidine."
(Id. at 3.) Dr. Addy concludes, therefore, that Pro-Health
"*will cause* staining of teeth in a proportion of subjects" and
"*would be expected*" to cause taste impairment in some
individuals. (Id. at 7 (emphasis added)). Dr. Addy's language
– "will cause" and "would be expected" – states his opinion
regarding causation "in terms stronger than medical
possibility." Ambling, 283 Ga. App. at 29. Thus, Vinson has
proffered expert evidence that would allow a jury to infer, to a
reasonable degree of medical probability or certainty, that Pro-
Health is capable of causing tooth discoloration and taste
impairment.

Nevertheless, Defendants contend that Vinson has not
offered any expert specific causation evidence that would permit
a jury to find to a reasonable degree of medical probability
that Pro-Health did in fact cause his alleged injuries.
However, Vinson has proffered evidence sufficient to escape
summary judgment.

Dr. Long, Vinson's dentist, signed an affidavit in which he
concluded:

> My review of the literature, my experience as a
> dentist, and my experience as the treating dentist of
> Larry Vinson lead me to conclude that a person who
> suffers tooth staining, tongue staining and impairment
> of the sense of taste after starting to use Crest Pro-
> Health mouthwash on a regular basis, and whose
> symptoms disappear following termination of use of

>Crest Pro-Health mouthwash has *more likely than not* suffered the tooth staining, tongue staining and taste impairment because of the Crest Pro-Health mouthwash.
>. . .

(Long Aff. ¶ 5 (emphasis added)). Dr. Long's affidavit is stated in terms stronger than medical possibility. See Ambling, 283 Ga. App. at 29. Dr. Long's affidavit therefore constitutes expert evidence sufficient to permit a jury to infer that Pro-Health did in fact cause Vinson's alleged injuries.

Defendants argue that Dr. Long's affidavit cannot be used as evidence of specific causation for a number of reasons. First, Defendants contend that because Vinson admitted *he* did not know whether his teeth were stained prior to using Pro-Health (Vinson Dep. 24-25), Dr. Long had insufficient evidence to reach his conclusion that Vinson's staining developed after Vinson started using the product. However, this argument ignores the likely possibility that Dr. Long's causation opinion was based on his own observations and experience as Vinson's treating dentist. Dr. Long deposed that given his "history with Mr. Vinson and his meticulous home care, for [Vinson] to suddenly appear with the degree of staining that he had, [Long] attributed the staining to [Vinson's] stated use of the mouthrinse." (Long Dep. 44.)

Second, Defendants argue that Dr. Long's causation opinion should be discounted because it relies too heavily on the

11

temporal relationship between Vinson's use of Pro-Health and the onset of his symptoms. Defendants contend that drawing conclusions about causation based on chronological relationships "leads to the blunder of the *post hoc ergo propter hoc*[1] fallacy." (Def. Reply Br. 7 (quoting McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1243 (11th Cir. 2005)). In explaining this fallacy, the McClain court cited a D.C. Circuit Court of Appeals case:

> In essence, the requirement of 'adequate documentation in scientific literature' ensures that decision makers will not be misled by the *post hoc ergo propter hoc* fallacy – the fallacy of assuming that because a biological injury occurred after a spill, it must have been caused by the spill.

Id. (quoting Ohio v. U.S. Dep't of the Interior, 880 F.2d 432, 473 (D.C. Cir. 1989)). The "requirement" to which the D.C. Circuit referred was part of the Department of the Interior's "acceptance criteria" for determining whether a hazardous substance release actually caused injury to a particular biological resource. U.S. Dep't of the Interior, 880 F.2d at 468. The Department's criteria required that a "'biological response' alleged to have been precipitated by [a] hazardous substance release [be] a 'commonly documented response' to oil or hazardous substance spills." Id. Thus, the D.C. Circuit reasoned that checking an observed chronological relationship

---
[1] "After this, therefore because of this." Black's Law Dictionary 1205 (8th ed. 2004) (defining "post hoc").

12

against relevant scientific literature explaining causation mitigates the *post hoc* blunder.

Here, Dr. Long does not base his causation experience exclusively on chronology. He bases his opinion on his experience as Vinson's treating dentist and his "review of the literature" concerning CPC. (Long Aff. ¶ 4-5.)

Third, Defendants argue that Dr. Long's causation opinion should be disregarded because Dr. Long "did not satisfy the requirements for making a reliable differential diagnosis." (Def. Br. in Supp. 16.) Differential diagnosis is a patient-specific process of elimination that physicians use to identify the most likely cause of an injury from a list of possible causes. Hawkins v. OB-GYN Assocs., P.A., 290 Ga. App. 892, 893, 660 S.E.2d 835, 837 (2008). The process does not, however, "unequivocally prove" causation. Siharath v. Sandoz Pharm. Corp., 131 F. Supp. 2d 1347, 1362 (N.D. Ga. 2001). Thus, while differential diagnosis may be useful in determining specific causation, Dr. Long's failure to use the process here does not demand the grant of summary judgment to Defendants.

Finally, Defendants argue that Dr. Long's affidavit cannot be used to establish specific causation because Vinson never identified Dr. Long as an expert witness under Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure, and Dr. Long never provided an expert witness report as required by Rule

26(a)(2)(B). Rule 26(a)(2)(A) requires parties to disclose the identity of any witness that may be used at trial to present expert opinion evidence under the Federal Rules of Evidence. Rule 26(a)(2)(B) requires additional disclosures with respect to expert witnesses who are "retained or specially employed to provide expert testimony in the case." Such witnesses must file an expert report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor [along with] the data or other information considered by the witness." Fed. R. Civ. P. 26(a)(2)(B). According to Rule 37(c)(1), a party that fails to identify an expert witness under the disclosure requirements of Rule 26(a) is not permitted to use that witness's testimony as evidence on a motion "unless such failure is harmless." Fed. R. Civ. P. 37(c)(1).

Generally, treating physicians like Dr. Long are not subject to the Rule 26(a)(2)(B) filing requirement. See Leathers, 233 F.R.D. at 696. ("[Treating physicians] are not considered "retained" or "specially employed" to the extent their testimony concerns their personal care, diagnosis, and treatment of a patient."). However, a treating physician may need to provide an expert report when the physician "goes beyond the observations and opinions obtained by treating the individual and expresses opinions acquired or developed in anticipation for trial." Vaughn v. United States, 542 F. Supp.

14

2d. 1331, 1336 n.3 (S.D. Ga. 2008). In any event, Rule 26(a)(2)(A) still requires disclosure of *any* witness who will offer expert opinion testimony under the Federal Rules of Evidence, regardless of whether the witness was specially retained for trial or not. See Albough v. United States, No. CV 106-200, 2008 WL 686701, *2 (S.D. Ga. Mar. 13, 2008).

Here, there is no dispute that Vinson failed to identify Dr. Long as an expert witness as required by Rule 26(a)(2)(A). Nevertheless, this Court concludes that Vinson's failure to identify Dr. Long as an expert witness is harmless. See Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (district courts have broad discretion to determine whether a violation of Rule 26(a) is harmless). Accordingly, Rule 37(c)(1) does not bar Vinson from using Dr. Long's affidavit as evidence of specific causation.

The purpose of the Rule 26(a) disclosure requirements is to provide notice to opposing counsel as to what an expert witness will testify. See Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008). Notice permits opposing counsel the opportunity to prepare adequate and effective cross-examination, and ensures that there will be no unfair surprise. Reed v. Binder, 165 F.R.D. 424, 429 (D.N.J. 1996). A party's failure to properly disclose an expert witness is harmless when no

15

prejudice results to the opposing party.  <u>Nguyen v. IBP, Inc.</u>, 162 F.R.D. 675, 680 (D. Kan. 1995).

Here, Defendants are not prejudiced by Vinson's failure to identify Dr. Long as an expert under Rule 26(a)(2).  Defendants had adequate notice that Dr. Long could be called as a witness and, in fact, already took his deposition.  See <u>EEOC v. Pac. Mar. Ass'n</u>, No. 99-536-FR, 2001 WL 1729050, *1 (D. Or. Nov. 26, 2001) (failure to disclose plaintiff's treating physician as expert was harmless where physician had already been deposed by defendant).  Moreover, as between Dr. Long's deposition testimony and his affidavit, the basis for his causation opinion did not change, only his degree of certainty.[2]  In both his deposition and his affidavit, Dr. Long states that his conclusions were based on his own independent research and his experience as Vinson's treating dentist.  (Long Aff. ¶ 5; Long Dep. 31, 37, 44.)  Defendants have therefore had fair and

---

[2] The Court notes Defendants' observation that, in his deposition, Dr. Long only stated his opinion as to the cause of Vinson's alleged injuries in terms of *reasonable possibility*.  (See Long Dep. 31 (Pro-Health "could have been the cause" of the tooth staining).)  Defendants correctly point out that this language would not be sufficient to state to a reasonable degree of medical probability or certainty that Pro-Health did in fact cause Vinson's alleged injuries.  See <u>Ambling</u>, 283 Ga. App. at 29.  In Long's affidavit, on the other hand, he avers that Vinson "*more likely than not* suffered the tooth staining, tongue staining and taste impairment because of [ Pro-Health]."  (Long Aff. ¶ 5 (emphasis added).)  The affidavit, therefore, does constitute sufficient evidence of specific causation because it is an expert opinion stated in terms of "reasonable medical probability or reasonable certainty." <u>Ambling</u>, 283 Ga. App. at 29.  Any inconsistencies between the statements in Long's deposition and affidavit, however, do not affect the Court's analysis as to whether Long's affidavit can be used as evidence of specific causation in the instant Motion.  Such discrepancies in the witness's testimony go to credibility and should be evaluated by the jury at trial.

16

adequate notice as to what Dr. Long may testify at trial, as well as the basis for such testimony. Defendants have not been subjected to unfair surprise. Accordingly, the Court permits Dr. Long's affidavit as evidence of specific causation even though Vinson failed to identify Dr. Long as an expert witness pursuant to Rule 26(a)(2)(A).

Taking Dr. Addy's expert report and Dr. Long's affidavit together, Vinson has produced sufficient expert evidence that would allow a jury to find that Pro-Health (1) is capable of causing tooth discoloration and taste impairment, and (2) that Pro-Health did in fact cause Vinson to suffer tooth discoloration and taste impairment. See Jack, 239 F. Supp. 2d at 1321. Thus, Vinson has satisfied his burden under Georgia strict products liability law of producing evidence that Defendants' product was the proximate cause of his alleged injuries. See Talley, 158 Ga. App. at 135. Defendants, therefore, are not entitled to summary judgment on the basis that Vinson has not produced the requisite expert evidence of proximate cause.

### C. Failure to Warn

Finally, Defendants argue that they are at least entitled to summary judgment insofar as Vinson claims that the warning label on Defendants' product was inadequate. Under Georgia law, a product user's failure to read an allegedly negligent warning

17

is a complete bar to a product defect failure to warn claim. Cobb Heating & Air Conditioning Co., Inc. v. Hertron Chem. Co., 139 Ga. App. 803, 804, 229 S.E.2d 681, 682 (1976); see also Powell v. Harsco Corp., 209 Ga. App. 348, 350, 433 S.E.2d 608, 610 (1993) ("The alleged inadequacy of the installation instructions cannot be the proximate cause of the collapse of the catwalk and [decedent's] death when the installer did not read the installation directions that [defendant's] subsidiary actually provided."). Here, it is undisputed that Vinson never read the Pro-Health label. (Vinson Dep. 42, 54.)

Nevertheless, Vinson argues that the failure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer to communicate the dangers of the product to the consumer. See Rhodes v. Interstate Battery Sys. of Am., 722 F.2d 1517, 1519 (11th Cir. 1984). In Rhodes, the plaintiff admitted that he did not read the warning on a car battery before he struck a match to check the battery's fluid level. Id. at 1518. However, the plaintiff also alleged that he would have been unable to read the dark letters of the embossed warning on the top of the battery because his battery died at night and there was insufficient lighting. Id. at 1520. The Eleventh Circuit concluded that there was a factual issue as to the adequacy of the battery manufacturer's communication of the warning.

The Eleventh Circuit later distinguished Rhodes in Thornton v. E.I. DuPont De Nemours & Co., Inc., 22 F.3d 284 (11th Cir. 1994). In Thornton, the plaintiff was injured after he attempted to use automotive lacquer thinner to buff a flagstone floor. The plaintiff was badly burned when the highly flammable liquid burst into flames. Id. at 286. Although Thornton did not read the warning on the lacquer thinner, he argued that, as in Rhodes, his failure did not bar recovery because the communication of the warning was inadequate. Id. at 290. The Eleventh Circuit disagreed. Unlike the plaintiff in Rhodes, "Thornton had the opportunity to read the label and failed to do so." Id. Thus, the court concluded that "any insufficiency in the warning label was not the proximate cause of Thornton's injuries." Id.

Here, Vinson testified that he did not read the warning label on the Pro-Health bottle. (Vinson Dep. 42, 54.) There is no indication or allegation that Vinson was unable to read the label during the weeks that he used the product. Unlike the plaintiff in Rhodes, Vinson "had the opportunity to read the label, but failed to do so." Thornton, 22 F.3d at 290. Accordingly, Vinson cannot establish that the inadequate warning on the Pro-Health bottle proximately caused the temporary tooth stains and taste impairment he allegedly suffered. The inadequate warning component of Vinson's strict liability claim

19

under Count One, therefore, is not an issue for the trial of this case.

**CONCLUSION**

Because Plaintiffs have elected to waive any claim under Count Two of their Fourth Amended Complaint, the Court need only address Defendants' Motion for Summary Judgment on Vinson's strict liability claim. For the reasons stated above, the Court **GRANTS** Defendants' Motion as to the inadequate warning claim. In all other respects, however, the Court **DENIES** Defendants' Motion for Summary Judgment. (Dkt. No. 116.)

**SO ORDERED,** this  30th  day of October, 2009.

_____
HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA